Opinion
 

 MOSK, J.
 

 In this case, borrowers defaulted on a loan secured by separate deeds of trust on three parcels of real property. The creditor bank conducted a nonjudicial foreclosure of one property and then proceeded with serial foreclosure sales of the remaining properties; prior to each successive sale, it did not seek a judicial determination of fair market value of the property sold or purport to credit such amount to the debt.
 

 We granted review to determine whether the bank thereby violated the antideficiency provisions of Code of Civil Procedure section 580a or 580d. There was no violation. Code of Civil Procedure section 580a does not limit a creditor’s right to proceed against multiple items of collateral. Nor did the sales fall under Code of Civil Procedure section 580d’s restriction against deficiency judgments. Accordingly, we affirm the judgment of the Court of Appeal.
 

 I
 

 The loan at issue herein originated in June 1988, when four entities, LCF Income Group, La Canada Flintridge Development Corporation, San Martin Investment Development Corporation, and Peppertree Corporate Business Park, Ltd. (hereafter collectively the borrowers), borrowed $8.7 million from the Bank of California, predecessor in interest to defendant Union Bank of California (hereafter the bank). The loan, intended to be used to purchase and develop a large parcel of property in Simi Valley known as the Pepper-tree property, was secured by a deed of trust covering the property. The deed of trust provided that upon any default by the borrowers, the bank could elect to sell the property and was entitled to bid for and purchase the property by credit bid in any judicial or nonjudicial foreclosure. It also provided that if the bank held any additional collateral, it could, at its sole
 
 *404
 
 option, exercise any rights or remedies under the deed of trust, either concurrently or in such order as it might determine. Gilbert Dreyfuss was the general partner of LCF Income Group; he and his wife, Evelyn H. Dreyfuss, executed personal guaranties on the loan. The loan was to mature on July 1, 1991.
 

 The borrowers defaulted. The bank subsequently extended the maturity date on the loan until October 1, 1993, under a modified loan agreement. The modified loan agreement provided for additional collateral, consisting of two parcels of real property—the Clinton property, located in Maryland, and lot No. 66 (hereafter Lot 66), located in La Canada, California. The deeds of trust stated that the additional collateral was provided to secure the entire loan; they permitted recourse to the collateral, at the bank’s option, either before, concurrently, or after a sale of any additional security. The modified loan agreement contained an integration clause, under which the agreement and all instruments referred to therein constituted the entire agreement between the parties and superseded any and all prior agreements and understandings with respect thereto, whether oral or written.
 

 In October 1993, the borrowers again defaulted. The bank initiated foreclosure proceedings on the Peppertree property, the Clinton property, and Lot 66. The borrowers filed for bankruptcy protection, resulting in an automatic stay. (11 U.S.C. § 362.) In April 1995, the bank obtained relief from the automatic stay.
 

 In June 1995, the borrowers, the guarantors, and the bank entered a limited forbearance agreement. Under the terms of the forbearance agreement, the bank agreed to desist from further foreclosure activities and to discount the debt to $5.2 million if paid in full by December 1, 1995; the borrowers agreed to waive the automatic stay as to the bank in any future bankruptcy proceedings. Thereafter, at the borrowers’ request, the final date for payment in full was extended, pursuant to an extension agreement, until December 21, 1995.
 

 The borrowers again defaulted and the bank recommenced nonjudicial foreclosure proceedings with regard to the Peppertree property. On the morning of the scheduled nonjudicial foreclosure sale, the LCF Income Group filed a second bankruptcy proceeding; the bank immediately moved for and obtained relief from the automatic stay.
 

 As of January 30, 1996, the remaining indebtedness exceeded $3.75 million. On that date, the bank made a successful $2.15 million credit bid at the nonjudicial foreclosure sale of the Peppertree property, leaving a balance
 
 *405
 
 of more than $1.6 million on the debt. On February 22, 1996, a foreclosure action against the Clinton property was conducted in Maryland under Maryland law; the bank made a successful $1.4 million credit bid at that sale, leaving more than $200,000 due on the debt. On May 5, 1996, the bank nonjudicially foreclosed on the Lot 66 property, making a successful $200,000 credit bid at the sale. The bank did not seek a money judgment against any of the borrowers or guarantors in connection with the loan or any deficiency remaining after the foreclosures of the properties pledged as security for the loan.
 

 Gilbert and Evelyn H. Dreyfuss and LCF Income Group (hereafter plaintiffs) filed a complaint seeking monetary and other relief. They contended, inter alia, that the foreclosures of the Clinton and Lot 66 properties constituted wrongful attempts to obtain a deficiency judgment after the foreclosure of the Peppertree property, in violation of Code of Civil Procedure section 580d. In the alternative, they urged that, even if the sales were not altogether precluded, the bank was required to credit them with the fair market value of the Peppertree property pursuant to Code of Civil Procedure section 580a before foreclosing against the additional properties. They also alleged that the sale of the Clinton and Lot 66 properties breached the covenant of good faith and fair dealing.
 

 The bank moved for summary judgment. At the hearing, the superior court observed: “The non-judicial foreclosure was an open auction. I don’t see anything contesting the actual foreclosure proceedings, the actual sale, and . . . nothing prevented either the borrower from bidding in money if he thought it was worth it or someone else and letting the market set the price.” It granted the motion on the grounds that the bank’s conduct was not wrongful under Code of Civil Procedure section 580a or 580d and that the plaintiffs failed to raise any triable issue of material fact. (Code Civ. Proc., § 437c, subd. (c).) Plaintiffs unsuccessfully sought reconsideration of the order granting summary judgment.
 
 [1]
 

 The Court of Appeal affirmed the judgment. It held that neither section 580a nor section 580d of the Code of Civil Procedure applied in these
 
 *406
 
 circumstances; any revision of the statutes, based on policy considerations, to require a determination of fair market value in foreclosure situations when a debt is secured by multiple items of real property “is a matter for the Legislature to consider if it deems it appropriate to do so.”
 

 We granted review; we now affirm.
 

 II
 

 Do the antideficiency provisions of Code of Civil Procedure sections 580a and 580d restrict the ability of a creditor to exhaust multiple items of collateral in a series of nonjudicial foreclosure proceedings? We address the question under a de novo standard of review.
 
 (Birman v. Loeb
 
 (1998) 64 Cal.App.4th 502, 508 [75 Cal.Rptr.2d 294].) The answer is
 
 no;
 
 the provisions are not implicated when a creditor merely exercises the right to exhaust all of the real property pledged to secure an obligation. Specifically, a creditor may proceed seriatim in foreclosing against multiple items of collateral without commencing a judicial action to determine the fair market value of each item sold, and crediting that amount to the debt, before proceeding with foreclosure sales of any additional collateral.
 

 Code of Civil Procedure section 580a, in pertinent part, provides: “Whenever
 
 a money judgment is sought for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property . . . was given as security,
 
 following the exercise of the power of sale in such deed of trust or mortgage, the plaintiff shall set forth in his or her complaint the entire amount of the indebtedness which was secured by the deed of trust or mortgage at the time of sale, the amount for which the real property or interest therein was sold and the fair market value thereof at the date of sale and the date of that sale. . . . Before rendering any judgment the court shall find the fair market value of the real property . . . sold, at the time of sale. The court may render judgment for not more than the amount by which the entire amount of the indebtedness due at the time of sale exceeded the fair market value of the real property or interest therein sold at the time of sale with interest thereon from the date of the sale; provided, however, that in no event shall the amount of the judgment,
 
 *407
 
 exclusive of interest after the date of sale, exceed the difference between the amount for which the property was sold and the entire amount of the indebtedness secured by the deed of trust or mortgage.” (Italics added.)
 

 Code of Civil Procedure section 580d, in pertinent, part provides: “No judgment shall be rendered
 
 for any deficiency upon a note secured by a deed of trust or mortgage upon real property
 
 or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.” (Italics added.)
 

 By their terms, both provisions apply only when a personal judgment against the debtor is sought after a foreclosure. Code of Civil Procedure section 580a refers to “money judgment ... for the balance due upon an obligation” secured by a deed of trust or mortgage. Code of Civil Procedure 580d refers to a “judgment . . . rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property.” “A ‘deficiency judgment’ is a personal judgment against a debtor for a recovery of the secured debt measured by the difference between the debt and the net proceeds received from the foreclosure sale.” (4 Miller & Starr, Cal. Real Estate (2d ed. 1989) Deeds of Trust and Mortgages, § 9:156, p. 524, fn. omitted; accord,
 
 Hatch
 
 v.
 
 Security-First Nat. Bank
 
 (1942) 19 Cal.2d 254, 261 [120 P.2d 869] [defining a deficiency judgment as “a personal judgment for the unpaid balance due upon an obligation after unsuccessful resort to the security”].) “[A] ‘deficiency judgment’ requires court proceedings to establish the debtor’s liability following the foreclosure of the deed of trust.” (4 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 § 9:156, p. 524, italics omitted.)
 
 [2]
 

 Under settled decisional law, a creditor’s resort to any and all security on a debt does not implicate the antideficiency provisions. As we held nearly 60 years ago in
 
 Hatch v. Security-First Nat. Bank, supra,
 
 19
 
 *408
 
 Cal.2d at page 258, Code of Civil Procedure section 580a applies only to shield a borrower from personal liability; it has “no application to a situation where ... no attempt is made by the creditor to secure a personal judgment against a debtor for a deficiency remaining after sale under a deed of trust.”
 
 [3]
 

 We subsequently reaffirmed that rule in
 
 Freedland v. Greco
 
 (1955) 45 Cal.2d 462, 466 [289 P.2d 463], expressly referring also to Code of Civil Procedure section 580d. When a note is secured by multiple items of security, “the creditor may exhaust the additional security and need not follow the procedure following a sale under a trust deed prescribed by section 580a of the Code of Civil Procedure [citation,] nor is he prevented from exhausting the other security where the trust deed is a purchase money one on which no deficiency judgment may be given .... By analogy the same rule would apply to section 580d . . . here involved .... [T]he pursuit of additional security is not a deficiency judgment . . . .”
 
 {Freed-land
 
 at p. 466, fn. omitted.) As one treatise summarizes the rule: “When the beneficiary holds two or more deeds of trust on separate parcels of property to secure the same debt, he can foreclose the lien on one parcel of real property . . . and then proceed to foreclose the liens on the remaning parcels by non-judicial sales. . . . [H]owever, once the beneficiary has exercised the power of sale and the property has been sold, the beneficiary cannot recover a personal judgment against the trustor either before or after he has enforced the additional security.” (4 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 § 9:156, pp. 528-529, fns. omitted.)
 

 More recently, in
 
 Western Security Bank v. Superior Court
 
 (1997) 15 Cal.4th 232, 252 [62 Cal.Rptr.2d 243, 933 P.2d 507], we reiterated the rule: “A creditor that draws on [additional security] does no more than call on all the security pledged for the debt. When it does so, it does not violate the prohibition of deficiency judgments.” (See also
 
 Birman
 
 v.
 
 Loeb, supra,
 
 64
 
 *409
 
 Cal.App.4th at p. 514 [“The courts have repeatedly held that resort to additional security following a nonjudicial foreclosure is not an attempt to secure a deficiency judgment.”].)
 

 Accordingly, under our long-standing case law, there is no requirement under Code of Civil Procedure section 580a that a creditor, after foreclosing on one item of real property security, obtain a judicial determination of any unpaid balance remaining on the debt before resorting to additional security. As we explained in
 
 Hatch,
 
 the language of the provision does not indicate legislative intent to so protect additional property pledged in security for the principal obligation: “By its express terms, the statute is concerned only with actions to recover deficiency judgments after the security is exhausted.”
 
 (Hatch
 
 v.
 
 Security-First Nat. Bank, supra,
 
 19 Cal.2d at p. 261.) No steps must be taken under section 580a to determine the fair market value of any real property security sold in a nonjudicial foreclosure before the creditor is entitled to resort to any additional security for an obligation.
 
 (Hatch,
 
 at p. 261.) “[T]he giving of additional security for [a] note gives the right to exhaust such security . .
 
 .'(Freedland v. Greco, supra,
 
 45 Cal.2d at p. 466; see also
 
 Mortgage Guarantee Co. v. Sampsell
 
 (1942) 51 Cal.App.2d 180, 186 [124 P.2d 353] [foreclosure sale of real property under a deed of trust does not prevent the creditor from proceeding to recover upon any additional primary security].)
 

 Significantly, although the Legislature has made several nonsubstantive changes to Code of Civil Procedure section 580a subsequent to our decision in
 
 Hatch v. Security-First Nat. Bank, supra,
 
 19 Cal.2d 254, it has not altered the wording or scope of the statute, which continues to refer to a “money judgment . . . for the balance due upon an obligation”—i.e., a deficiency judgment against the personal assets of the borrower. (See Stats. 1968, ch. 450, § 2, p. 1070; Stats. 1970, ch. 1282, § 1, p. 2320; Stats. 1982, ch. 1535, § 1, p. 5965; Stats. 1988, ch. 1199, § 6, pp. 3878-3879.)
 

 Neither .appraisal nor judicial determination of fair market value is required as part of nonjudicial foreclosure of real property securing a loan.
 
 (Alliance Mortgage Co.
 
 v.
 
 Rothwell
 
 (1995) 10 Cal.4th 1226, 1236 [44 Cal.Rptr.2d 352, 900 P.2d 601].) Nor is there any requirement that the sales price approximate the fair market value of the property. “[I]t is settled that ‘Where there is no irregularity in a nonjudicial foreclosure sale and the purchaser is a bona fide purchaser for value, a great disparity between the sales price and the value of the property is not a sufficient ground for setting aside the sale.’ ”
 
 (Id.
 
 at p. 1237, quoting
 
 Moeller
 
 v.
 
 Lien
 
 (1994) 25 Cal.App.4th 822, 832 [30 Cal.Rptr.2d 777];
 
 Central Nat. Bank
 
 v.
 
 Bell
 
 (1936) 5 Cal.2d 324, 328 [54 P.2d 1107] [“It is no new doctrine in this
 
 *410
 
 state that mere inadequacy of price is not sufficient ground for setting aside a trustee’s sale legally conducted . . . cf.
 
 BFP
 
 v.
 
 Resolution Trust Corporation
 
 (1994) 511 U.S. 531, 542 [114 S.Ct. 1757, 1763-1764, 128 L.Ed.2d 556] [“[M]ere inadequacy of the foreclosure sale price is no basis for setting the sale aside, though it may be set aside ... if the price is so low as to ‘shock the conscience or raise a presumption of fraud or unfairness.’ ”].) Thus, in
 
 Moeller
 
 v.
 
 Lien, supra,
 
 25 Cal.App.4th 822, a sale price of only 25 percent of the value of the property was not grounds for invalidating the sale.
 
 [4]
 

 There is no different rule when the creditor is the purchaser of the real property security. Anyone, including the creditor, can bid at a foreclosure sale. (4 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 § 9:149, p. 492.) The creditor is entitled to make a credit bid up to the amount of the indebtedness without payment of additional cash.
 
 (Ibid.;
 
 Civ. Code, § 2924h, subd. (b).) Such a credit bid can be made in an amount up to the sum of the total amount due, including the fees and expenses of the trustee. (Civ. Code, § 2924h, subd. (b).) “[T]he mortgagee is not required to open the bidding with a full credit bid, but may bid whatever amount he thinks the property worth. Indeed, ‘many creditors continually enter low credit bids ... to provide access to additional security or additional funds.’ [Citation.] It has been said that this is what the creditor should do . . . .”
 
 (Cornelison v. Kornbluth
 
 (1975) 15 Cal.3d 590, 607 [125 Cal.Rptr. 557, 542 P.2d 981].)
 
 [5]
 

 Plaintiffs assert that the policies underlying the antideficiency provisions preclude a creditor from obtaining not only a deficiency judgment, but what they characterize as the “functional equivalent of a deficiency judgment.” Specifically, they argue that application of the fair market value provisions of Code of Civil Procedure section 580a is required to avoid a windfall recovery to the creditor. Without such protection, a borrower who secures a debt with items of multiple security runs the risk that all of it will be sold to satisfy the obligation, even if the fair market value of one item of
 
 *411
 
 security is sufficient to satisfy the debt. They urge that there is “room, and a serious need,” for this court to “carve out a ‘fair value’ exception” where a creditor holds several items of security and serially forecloses on them.
 

 We decline to do so. The nonjudicial foreclosure provisions evince the legislative intent to establish an equitable trade-off of protections and limitations affecting the defaulting borrower and his or her creditor. In a nonjudicial foreclosure, the borrower is protected, inter alia, by notice requirements and a right to postpone the sale, in order to avoid foreclosure either by redeeming the property from the lien before the sale or finding another a purchaser. (Civ. Code, §§ 2903, 2924, 2924g.) Nonjudicial foreclosure proceedings must be conducted by auction in a fair and open manner, with the property sold to the highest bidder
 
 (id.,
 
 § 2924g), permitting the borrower, or anyone else, to participate in setting the price for the property. Most important, the borrower is relieved from any
 
 personal liability
 
 on the debt. (See
 
 Roseleaf Corp. v. Chierighino
 
 (1963) 59 Cal.2d 35, 42 [27 Cal.Rptr. 873, 378 P.2d 97].) Thus, in the event of a default, the borrower stands to lose only such property as he or she specifically chose to place at risk, leaving the creditor to carry the burden of any additional loss in value if the amount of the debt exceeds the value of the assets pledged as security for the loan. For its part, the creditor gains the certainty of a “quick, inexpensive and efficient remedy.”
 
 (Moeller
 
 v.
 
 Lien, supra,
 
 25 Cal.App.4th at p. 832.) A properly conducted sale does not require judicial oversight and constitutes “a final adjudication of the rights of the creditor and debtor.”
 
 (Ibid.)
 
 Applying the fair market value provisions of Code of Civil Procedure section 580a in this context as plaintiffs urge, by eliminating the finality of nonjudicial foreclosure and requiring judicial oversight, would derogate the legislative goal of providing a “quick, inexpensive, and efficient remedy.”
 

 Nor, contrary to plaintiffs’ urging, does the fact of successive foreclosure sales of separate items of real property collateral provide room or need for what they refer to as a “ ‘fair value’ exception.” The same balance of considerations applies in the event of a single nonjudicial foreclosure and a series of foreclosures. As to the potential of a windfall recovery to the creditor, because, as discussed, the creditor is entitled to bid for the property at a nonjudicial foreclosure sale in an amount less than the total amount due
 
 (Cornelison v. Kornbluth, supra,
 
 15 Cal.3d at p. 607), there is always the theoretical possibility that the creditor could eventually sell the real property collateral for an amount greater than its successful credit bid and the amount of the outstanding debt. But that is true whether one or multiple items of real property collateral are sold, and whether the sales are conducted at once or seriatim.
 

 For the same reason, we are unpersuaded by plaintiffs’ proposal that we construe Code of Civil Procedure section 580a with reference to multiple
 
 *412
 
 security situations to permit a borrower who believes the creditor did not credit the fair value of property recovered in prior sales to set aside a subsequent trustee’s sale or provide for restitution of an unjust recovery. We also reject any similar suggestion that we construe the statute to permit a debtor to go to court to challenge the price obtained at a nonjudicial foreclosure sale and have subsequent sales enjoined if the sales to date have satisfied the debt based on a fair market valuation. (See Mertens,
 
 California’s Foreclosure Statutes: Some Proposals for Reform
 
 (1986) 26 Santa Clara L.Rev. 533, 561; 4 Miller & Starr, Cal. Real Estate,
 
 supra,
 
 § 9:114, p. 378 [“Either the creditor should be required to hold a ‘fair value’ determination after each sale or the debtor should be allowed to bring a proceeding to establish the ‘fair value’ of each asset sold with an order to preclude further sales when the fair market value of the assets sold satisfies the secured debt or for the payment to the debtor of any surplus sales proceeds.” (Fn. omitted.)].) We are asked to “revitalize”—i.e., to rewrite—the fair market value provisions of Code of Civil Procedure section 580a to make them applicable as a defense to nonjudicial foreclosure on items of multiple security. Like the Court of Appeal, we decline to engraft the proposed additional requirements onto the law. Such an undertaking is a matter for legislative, not judicial, action.
 

 Ill
 

 Here, the borrowers entered a modified loan agreement with the bank, which was secured by three separate properties pledged as collateral for the debt. The additional pledge of the Clinton property and Lot 66 as security was given in exchange for the valuable consideration of an extension of the maturity date on the original loan. Despite the extension, and additional extensions under the forbearance agreement, the borrowers again defaulted. The bank was entitled, under the agreement and the deeds of trust, to foreclose on any, or all, of the properties to satisfy the debt. After it conducted a nonjudicial foreclosure on the Peppertree property, it was under no legal obligation under Code of Civil Procedure section 580a to seek a judicial determination of the unpaid balance remaining on the debt, or otherwise credit the borrowers with the fair market value of the Peppertree property, before resorting to a forced sale of the Clinton property or Lot 66. Neither an appraisal nor a judicial finding of the fair market value of the property was required.
 

 Plaintiffs assert that the bank improperly demanded that the Clinton property and Lot 66 be pledged as security for any deficiency in the event that foreclosure of the Peppertree deed of trust did not satisfy the balance of the debt. Relying on evidence submitted in a declaration by Gilbert Dreyfuss
 
 *413
 
 to the effect that he was coerced to pledge the properties for that purpose, plaintiffs contend that “[i]n substance the two properties were the functional equivalent of pre-arranged security for a deficiency recovery.” They argue that because the bank was precluded from seeking a deficiency judgment, it was barred by Code of Civil Procedure section 580d from foreclosing on the properties held in security for such deficiency. In lieu of any case law in point, they cite to commentary in a treatise criticizing
 
 Hatch v. Security-First Nat. Bank, supra,
 
 19 Cal.2d 254, and suggesting that there is little “significant difference between selling additional security and recovering a deficiency judgment.” (Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 2d ed. 1990) § 8.5, p. 399.)
 

 Even assuming that the proffered evidence is not barred by the parol evidence rule, as the bank contends, the claim fails.
 
 [6]
 
 For the reasons discussed, we remain persuaded that Code of Civil Procedure section 580d is inapplicable; it applies only when a money judgment is sought against the debtor for the balance due on a note secured by a deed of trust. As discussed, there is a significant difference between selling additional security that has been pledged for a loan and recovering a deficiency judgment against the personal assets of the borrower.
 

 We also reject plaintiffs’ belated contention that the bank’s failure to bid “the reasonable value” of the Peppertree and Clinton properties resulted in a forfeiture of its interest in Lot 66. No forfeiture occurred when the bank merely exhausted its real property collateral pursuant to the loan agreement and deeds of trust. For similar reasons, plaintiffs’ belated assertion of the equitable principles of unclean hands and unjust enrichment falls. There is no evidentiary predicate for the equitable relief they seek.
 

 Finally, plaintiffs contend that the bank violated the implied covenant of good faith and fair dealing by underbidding at the foreclosure sale. The point is without merit. The agreements at issue, including the forbearance agreement, expressly provided that, upon default, the bank could foreclose on the real property collateral in any order it chose. As discussed, under settled principles of law, the bank was entitled to make a credit bid in “whatever amount [it thought] the property worth.”
 
 (Cornelison v. Kombluth, supra,
 
 15
 
 *414
 
 Cal.3d at p. 607.) Even if the foreclosure sale price was less than what the fair market value of the property would have been under ordinary marketing conditions, that fact, without more, did not result in a breach of the implied covenant of good faith and fair dealing. “ ‘[Property that
 
 must
 
 be sold within [the] strictures [of a foreclosure] is simply
 
 worth less.
 
 No one would pay as much to own such property as he would pay to own real estate that could be sold at leisure and pursuant to normal marketing techniques.’ ”
 
 (Alliance Mortgage Co. v. Rothwell, supra,
 
 10 Cal.4th at p. 1237.)
 

 IV
 

 For the foregoing reasons, we affirm the judgment of the Court of Appeal.
 

 George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.
 

 [1]
 

 Plaintiffs sought reconsideration of the order granting summary judgment on the ground that the foreclosure sale of the Peppertree property was void because it was conducted by a former, rather than the current, trustee. They alleged the late discovery of documents indicating that the former trustee, which had earlier been substituted out, had purported to conduct the sale. They urged that had the foreclosure been conducted by the current trustee, the Peppertree owners would have been able to pay the indebtedness to the bank in full, thus avoiding the foreclosure sales of the Clinton and Lot 66 properties. The bank countered that the facts were not “new” and were, in any event, beyond the scope of the complaint, which involved only the propriety of the second and third foreclosure sales. (The issue of the validity of the Peppertree foreclosure sale was litigated separately in an action in Ventura County.) The superior court denied the motion in its entirety. It explained that it was “not ruling on the merits of the . . . first foreclosure.” We make no determination herein
 
 *406
 
 concerning the validity of the Peppertree foreclosure, which is not before us. Accordingly, we deny plaintiffs’ request for judicial notice of the judgment and record in its separate action challenging the validity of the foreclosure sale. We also do not decide whether they raised any triable issues as to the assertion that the bank underbid at the foreclosure sales, and deny their request that we take judicial notice of certain purported facts concerning the nature of bank appraisals. We assume, for the purposes of our analysis, that the foreclosure sales were duly conducted and that the borrowers were not credited with the fair market value of the properties.
 

 [2]
 

 At the time Code of Civil Procedure section 580a was enacted in 1933 (Stats. 1933, ch. 642, § 4, p. 1672), a creditor could foreclose on a property nonjudicially and request a deficiency judgment against the debtor through the courts when the fair market value of the property was less than the balance due on the obligation. Code of Civil Procedure section 580d, enacted in 1940 (Stats. 1941, 1st Ex. Sess. 1940, ch. 29, § 2, p. 84), barred all deficiency judgments after a nonjudicial foreclosure, largely abrogating the provisions under Code of Civil Procedure section 580a. (Hetland,
 
 Deficiency Judgment Limitations in California—A New Judicial Approach
 
 (1963) 51 Cal. L.Rev. 1, 5, fn. 20 [enactment of Code of Civil Procedure section 580(1 “left little area of operation to § 580a”]; but see, e.g.,
 
 Walter E. Heller Western, Inc. v. Bloxham
 
 (1985) 176 Cal.App.3d 266, 273 [221 Cal.Rptr. 425] [applying Code of Civil Procedure section 580a to shield borrower from imposition of personal liability in an action by a sold-out junior lienor that was the successful purchaser at a nonjudicial foreclosure sale by the senior lienor];
 
 Bank of Hemet v. United States
 
 (9th Cir. 1981) 643 F.2d 661, 668.)
 

 [3]
 

 As pertinent here, the facts in
 
 Hatch
 
 v.
 
 Security-First Nat. Bank, supra,
 
 19 Cal.2d 254, are briefly as follows. The defendant bank held a note secured by a deed of trust covering real property belonging to a decedent’s estate. After the bank gave notice of default and an election to sell and commenced suit against the decedent’s heirs, a forbearance agreement was entered under which, inter alia, the decedent’s children executed a deed of trust covering real property owned by them individually as additional security for the existing indebtedness of the estate.
 
 (Id.
 
 at p. 256.) When the forbearance period expired, the bank held a trustee’s sale under the deed of trust executed by the estate and subsequently conducted a trustee’s sale under the individuals’ trust deed over a period of several months.
 
 (Id.
 
 at p. 257.) The bank did not claim any right of action against the personal assets of decedent’s heirs for the remaining deficiency.
 
 (Ibid.)
 
 The decedent’s children filed quiet title actions against the bank, arguing that Code of Civil Procedure section 580a required the bank to seek a judicial determination of any deficiency remaining after the first sale before proceeding with sale of the real property pledged as additional security. Although plaintiffs attempt to distinguish the facts in
 
 Hatch
 
 from those herein, it remains, in its general outlines, closely analogous.
 

 [4]
 

 As the United States Supreme Court observed in
 
 BFP v. Resolution Trust Corporation, supra,
 
 511 U.S. at pages 537-538 [114 S.Ct. at page 1761]: “[M]arket value, as it is commonly understood, has no applicability in the forced-sale context; indeed, it is the very antithesis of forced-sale value. ... In short, ‘fair market value’ presumes market conditions that, by definition, simply do not obtain in the context of a forced sale.” (Italics omitted.)
 

 [5]
 

 The California Bankers Association, appearing with leave as amicus curiae, points out that the Legislature has enacted debtor protection provisions mandating minimum bidding at execution sales
 
 on a judgment debtor’s dwelling,
 
 including the requirement of a judicial determination of the fair market value of the dwelling. (Code Civ. Proc., §§ 704.750, 704.760, 704.770, 704.780, 704.800.) It thus clearly knows how to regulate the bidding process to narrow the gap between a forced sale and a sale under normal market conditions. Significantly, it has not done so with regard to the bidding procedures at a nonjudicial foreclosure sale.
 

 [6]
 

 The bank points out that the deeds of trust clearly stated that the additional real property collateral was provided to secure the entire loan. The deeds permitted recourse to the Clinton property and Lot 66 either before, concurrently, or after the sale of any additional security. The modified loan agreement included a clear integration clause, expressly superseding any and all prior agreements and understandings, whether oral or written, with respect to the terms of the agreement. (Code Civ. Proc., § 1856; Civ. Code, § 1625.) Plaintiffs counter that the declaration is offered not to vary the terms of the agreements, but to show that they were coerced. We need not decide the point.