Filed 5/10/23  Barber v. Select Portfolio Servicing CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| WAYNE BARBER et al.,<br><br>     Plaintiffs and Appellants,<br><br>     v.<br><br>SELECT PORTFOLIO SERVICING, INC. et al.,<br><br>     Defendants and Respondents. | D080912<br><br><br><br>(Super. Ct. No. PSC1802458) |

APPEAL from a judgment of the Superior Court of Riverside County, Kira L. Klatchko, Judge.  Affirmed.

Law Offices of Ronald H. Freshman and Ronald H. Freshman, for Plaintiffs and Appellants Wayne Barber and George White.

Kutak Rock, Steven M. Dailey, and Jennifer L. Andrews, for Defendants and Respondents Select Portfolio Servicing, Inc. and U.S. Bank, N.A., successor trustee to Bank of America, N.A., successor in interest to LaSalle Bank N.A., as trustee, on behalf of the holders of the WAMU Mortgage Pass-Through Certificates, series 2007-OA1.

Akerman, Parisa Jassim, and Alejandro Pacheco; Parker Ibrahim & Berg, Bryant S. Delgadillo, and John M. Sorich, for Defendant and Respondent JPMorgan Chase Bank, N.A.

INTRODUCTION

California law generally does not allow a preemptive attack on a nonjudicial foreclosure. (See *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 (*Yvanova*); *Saterbak v. JPMorgan Chase Bank, N.A.* (2016) 245 Cal.App.4th 808, 814 (*Saterbak*).) The instant matter underscores the wisdom of that principle.

Nearly 17 years ago, George and Rita White obtained a $800,000 home loan, which was secured by a deed of trust recorded against the White's home.[1] Shortly thereafter, the Whites sold their home to Wayne and Linda Barber.[2] Apparently, the money the Whites received from the sale of their home was not used to pay off their $800,000 loan because, by early 2015, the Whites were significantly in arrears on that loan.

After a notice of default and notice of trustee's sale were recorded based on the Whites' failure to make timely payments on their loan, the Barbers, in June 2015, sued numerous entities seeking to prevent a foreclosure sale of their home. However, they dismissed that suit after it was removed to federal court.

---

[1] Of the Whites, only George is a party in the instant action. However, to avoid confusion, we will refer to George and Rita by their respective first names when necessary in this opinion.

[2] Of the Barbers, only Wayne is a party in the instant action. However, to avoid confusion, we will refer to Wayne and Linda by their respective first names when necessary in this opinion.

Almost a year later, George White and Wayne Barber (George and Wayne, together Appellants) brought suit in Riverside Superior Court, relating to the same loan and the same property as the Barbers' previous suit. They again tried to prevent a foreclosure sale of the Barbers' home. That case was removed to the federal district court, which ultimately granted a motion to dismiss in favor of Select Portfolio Servicing, Inc. (SPS) and U.S. Bank, N.A., successor trustee to Bank of America, N.A., successor in interest to LaSalle Bank N.A., as trustee, on behalf of the holders of the WAMU Mortgage Pass-Through Certificates, series 2007-OA1 (U.S. Bank). The Ninth Circuit affirmed the order on appeal.

Nevertheless, Appellants continued their litigation efforts to forestall foreclosure. On April 27, 2018, Appellants filed suit in Riverside Superior Court, naming SPS as the only defendant. Again, the suit concerned the same property and same loan. However, the focus of the complaint was more narrow than the previous lawsuits. No longer were Appellants challenging SPS's authority to foreclose or claiming that any recorded document was void. Instead, Appellants asserted that SPS was improperly moving forward with foreclosure while Appellants were in the process of negotiating a loan modification. Appellants filed multiple amended complaints, with the fourth amended complaint being the operative one here. In that complaint, Appellants added U.S. Bank and JPMorgan Chase Bank, N.A. (Chase) as Doe defendants. Further, in that fourth amendment, Appellants returned to their original strategy of challenging the authority of the entities moving forward with the foreclosure, but they offered a new theory: Chase never owned the subject loan. Thus, a recorded assignment from Chase to U.S. Bank was void, as were all recorded instruments that followed that assignment.

3

SPS, U.S. Bank, and Chase (collectively Respondents) each demurred to the fourth amended complaint, which the court sustained, finding the claims against SPS and U.S. Bank were barred by res judicata, and the claims against Chase were time-barred.

Appellants appeal the ensuing judgment, arguing that the court erred in sustaining the demurrers because Appellants presented a new theory of liability based on recently discovered facts that Chase allegedly both concealed and misrepresented. Appellants acknowledge California law generally does not allow plaintiffs to preemptively challenge nonjudicial foreclosures. Nevertheless, they argue that the instant action presents a novel theory that warrants a new rule. To this end, Appellants claim that the subject deed of trust grants them the right to challenge the nonjudicial foreclosure on the grounds presented here. We disagree. The claim advanced here is neither novel nor does it underscore the need for a change in the law. Instead, this case presents an unfortunate but all too common foreclosure avoidance suit. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGOUND

*The Origination of the Subject Loan and Failure of the Lender*

In December 2006, George and Rita White obtained an $800,000 loan (White Loan) from lender Washington Mutual Bank, FA (Washington Mutual), secured by a deed of trust recorded against certain real property located in Palm Desert, California (Property). The deed of trust stated that Washington Mutual was the beneficiary, and the trustee was California Reconveyance Company.

In May 2007, the Whites sold the Property to Wayne and Linda Barber pursuant to a land contract- contract for deed. The purchase price for the Property was $1,050,000 with the Barbers making a $25,000 down payment

4

and agreeing to monthly payments of $3,750 at an interest rate of 4.39 percent from June 2007 to May 1, 2008. On May 1, 2008, the entire remainder of the purchase price became due.

Washington Mutual failed and has been in receivership with the Federal Deposit Insurance Company (FDIC) since September 28, 2008. Soon thereafter, Chase purchased Washington Mutual's assets and liabilities.

On May 1, 2012, a corporate assignment of deed of trust was recorded reflecting the deed of trust relating to the White Loan was assigned by Chase to U.S. Bank (2012 Assignment).

On March 2, 2015, a substitution of trustee was recorded substituting National Default Servicing Corporation (NDSC) as successor trustee under the deed of trust. Also, on March 2, 2015, a notice of default was recorded. The notice of default reflects that as of February 27, 2015, George and Rita White were in default on their loan in the amount of $276,491.34. On June 3, 2015, a notice of trustee's sale was recorded. On June 23, 2015, a grant deed was recorded evidencing that George and Rita White transferred the Property to Wayne and Linda Barber.

*The First Lawsuit*

On June 29, 2015, Wayne and Linda Barber filed an action in Riverside Superior Court, Case No. PSC1502966, against SPS and NDSC, relating to the White Loan and the Property. The Barbers alleged, in part, that SPS and NDSC did not have authority to foreclose due to an alleged issue in assignment or securitization. They specifically alleged that Washington Mutual failed, Chase "may have acquired assets of Washington Mutual," and they have "no information nor belief that [Chase] acquired the Whites' Note and its incident security instrument." Thus, as early as this first suit, Wayne questioned the validity of the 2012 Assignment.

5

The Barbers further alleged that George had filed for Chapter 7 bankruptcy and, as a result, the bankruptcy court discharged the note related to the White Loan as unsecured debt. As such, they alleged the deed of trust did not " 'survive' " George's bankruptcy. The Barbers also averred that the 2012 Assignment was a legal nullity and that the White Loan was not put into the subject securitized trust by the required deadline.

In addition, the Barbers alleged they submitted a loan modification application on June 25, 2015, but SPS and NDSC were proceeding with foreclosure despite the application.

The case was removed to federal court on July 30, 2015, and on August 6, 2015, SPS and NDSC filed a motion to dismiss. The Barbers dismissed the case on September 30, 2015.

*The Second Lawsuit*

On March 7, 2016, Appellants filed a complaint in the Riverside County Superior Court, Case No. PSC1601076, against U.S. Bank, SPS, and NDSC, relating to the White Loan and the Property. The case was removed to federal district court on April 13, 2016. U.S. Bank and SPS filed a motion to dismiss on April 20, 2016.

On May 10, 2016, Appellants filed a first amended complaint alleging causes of action for wrongful foreclosure, violations of Civil Code[3] sections 2924, subdivision (a)(6) and 2924.17, a breach of the covenant of good faith and fair dealing, and a violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200, et seq.). They also sought rescission under the Truth in Lending Act (TILA) (15 U.S.C. § 1635), declaratory relief, and cancellation of written instruments. Through the first amended complaint, Appellants attacked the authority of U.S. Bank and SPS to foreclose due to

---

[3] Statutory references are to the Civil Code unless otherwise specified.

6

alleged issues in the transfer of the White Loan to Chase. Appellants claimed "relevant sections" of the pooling and servicing agreement for the loan provide that, "prior to the Closing Date of the Trust, the Depositor agreed to deliver to the Custodian . . . the original Mortgage Note bearing all intervening endorsements." They further alleged the deed of trust was not "delivered to the Trust" before its closing, and thus it purportedly separated from the subject loan note.

Appellants also claimed U.S. Bank and SPS did not provide "accurate *material* disclosures" at the origination of the White Loan. As such, they claimed they had the right to rescind the loan under TILA and averred that they sent a notice of rescission on April 6, 2015.

On August 9, 2016, the federal district court granted SPS and U.S. Bank's motion to dismiss. The district court found Appellants' claims for wrongful foreclosure and violation of section 2924, subdivision (a)(6) were premature because no foreclosure had yet occurred. The court determined that Appellants' claim for a violation of section 2924.17 failed as the attack on the 2012 Assignment pre-dated the statute's January 1, 2013 effective date. The court also faulted Appellants for not pleading any facts to support this claim as well as not alleging they had brought the subject loan current. Additionally, the court concluded that Appellants' claim for breach of the covenant of good faith and fair dealing failed because Appellants had not alleged that they performed all their duties on the subject contract. The court found the cause of action for a violation of UCL failed to state a claim because Appellants did not suffer any alleged injury. The court determined that the rescission claim under TILA was time-barred, that the declaratory relief claim was a remedy and could not stand untethered to a surviving

7

cause of action, and that the cancellation of instruments claim failed because Appellants did not tender the amount of the loan that was in default.

On September 6, 2016, Appellants filed a notice of appeal of the district court's order granting the motion to dismiss. Some 13 months later, the Ninth Circuit issued its Memorandum decision affirming the district court's order.

*The Instant Matter*

Because the Whites had fallen behind in their loan payments, Appellants began discussion with SPS regarding the possibility of a loan modification. In the meantime, notices of trustee's sale were recorded on October 20, 2017 and February 16, 2018. During the loan modification application process, Appellants filed the complaint in the instant action, naming SPS as the only defendant. The complaint, filed on April 27, 2018, alleged three causes of action (violation of section 2923.6, breach of the covenant of good faith and fair dealing, and violation of the UCL) relating to the White Loan and the Property. Appellants' loan modification application was denied less than a month after the original complaint was filed.

On July 2, 2018, Appellants filed a first amended complaint. In addition to the three causes of action alleged in the original complaint, Appellants included a claim for negligence. Again, SPS was the only named defendant, and Appellants averred that SPS was improperly moving forward with a foreclosure while Appellants' loan modification application was under review. There were no allegations regarding the invalidity of the 2012 Assignment.

On September 12, 2018, the superior court sustained SPS's demurrer to the first amended complaint, with leave to amend. Appellants again applied for a loan modification on September 17, 2018 and that application was

8

subsequently denied. In addition, Appellants subsequently filed a second amended complaint.[4]

On January 8, 2019, Appellants filed a third amended complaint. On April 8, 2019, the court sustained, without leave to amend, SPS's demurrer to the causes of action for a UCL violation and negligence. The court also granted, without leave to amend, SPS's motion to strike allegations regarding damages and granted with leave to amend SPS's motion to strike claims for attorney fees. Appellants did not amend the complaint, and SPS filed an answer.

SPS subsequently filed a motion for summary judgment. Before the hearing on this motion, Appellants sought leave to file a fourth amended complaint, which the court granted.

On September 10, 2020, Appellants filed a fourth amended complaint, which is the operative complaint in this matter. They alleged causes of action for fraudulent concealment, intentional misrepresentation, cancellation of instruments, slander of title, violation of the UCL, and

---

[4]    Respondents represent that on December 11, 2018, the superior court sustained, in part, and overruled, in part, SPS's demurrer to the second amended complaint. The court allegedly sustained the demurrer, with leave to amend, as to the claims for negligence and a violation of the UCL. The court allegedly overruled the demurrer to the cause of action for violation of section 2923.6. Respondents do not cite to and we have not found a December 11, 2018 order in the record. That said, neither the existence of that order nor the fate of the second amended complaint have any bearing on the issues before us.

financial elder abuse.[5]  Appellants designated U.S. Bank as Doe 1 and Chase as Doe 2, "based on newly discover[ed] facts," and filed amendments to add U.S. Bank and Chase as defendants in the instant matter.

Appellants claimed that the 2012 Assignment was fraudulent because Chase misrepresented that it was the " 'successor in interest by purchase from the FDIC as receiver.' "  Appellants contended that the FDIC confirmed that the White Loan was never taken into receivership by the FDIC; thus, Chase did not purchase it.  As such, Appellants averred that "[a]ll documents flowing from this assignment are void.  This includes but is not limited to the [n]otice of [d]efault, [s]ubstitution of [t]rustee, and any [n]otices of [t]rustee [s]ale."[6]

Based upon Chase's alleged lack of any interest in the White Loan, Appellants alleged that Chase fraudulently concealed that the loan was not received by the FDIC and thus not purchased by Chase.  They further averred that the assignment of the deed of trust to Chase constitutes an intentional misrepresentation.  Based on their allegation that Chase never had any interest in the White Loan, Appellants argue none of the defendants named in the fourth amended complaint had the authority to foreclose on the

[5]    The causes of action for fraudulent concealment and misrepresentation were alleged against Chase only.  The slander of title claim was alleged against U.S. Bank and Chase.  The causes of action for cancellation of instruments, violation of the UCL, and financial elder abuse were alleged against all Respondents.

[6]    Appellants also allege that as late as 2019 or 2020, the FDIC did not have any record of what loans Washington Mutual retained a beneficial interest at the time of its failure.  However, now the FDIC has a database in which it can search to identify if a specific loan was received by the FDIC.  That database was searched and did not indicate that the White Loan was held by Washington Mutual at the time of its failure.

subject deed of trust. However, Appellants admit that the trustee's sale was postponed indefinitely.

Respondents filed separate demurrers to the fourth amended complaint. They also requested that the court take judicial notice of several recorded documents relating to the White Loan and Property as well as pleadings in the previous lawsuits regarding that loan and property. Appellants filed oppositions to the three demurrers. Respondents filed replies.

On March 5, 2021, in three separate orders, the court sustained Respondents' demurrers to the fourth amended complaint without leave to amend. As to SPS, the court stated that the causes of action alleged against it were barred under the doctrine of res judicata. Specifically, the court noted that the causes of action for cancellation of instruments and violation of the UCL "were actually raised and resolved on their merits by the federal district court, or could have been raised in that action." Although the cause of action for financial elder abuse "was not specifically litigated in the federal action, the allegations that appear to form the basis of the cause of action were previously at issue." Indeed, the court compared the allegations of wrongdoing in the fourth amended complaint with the allegations in the federal action:

> "[T]he only 'wrong' specific to the sixth cause of action stated at paragraph 132: 'Plaintiffs allege that Chase, US Bank, and SPS have since 2008, wrongfully taken payments made by Plaintiffs on the mortgage, that none were entitled to take. Welf. & Inst. Code § 15657.03(b)(2) and (b)(3).' In the federal action, Plaintiffs claimed that defendants, including [SPS] were unjustly enriched through collection efforts on payments not owed stating, among other things that 'Defendants . . . engaged in deceptive business practices . . . by collecting on a debt/mortgage that they each knew or should have know[n]

11

was void due to the illegal nature of the contract that would inevitably cause default before completion of the loan term and was therefore unconscionable . . . .' [Citation.] In other words, 'financial elder abuse' is merely a new theory of liability based on facts at issue in the federal suit, which was dismissed."

The court also concluded that Appellants had not alleged facts sufficient to assert any wrongful conduct by SPS to state a financial elder abuse claim.

Regarding U.S. Bank, the court determined that U.S. Bank was not a proper Doe defendant. The court emphasized that, under Code of Civil Procedure section 474, designation of fictious defendants must be accomplished when the true names of the defendants are discovered. To this end, the court noted that the language referring to U.S. Bank in the fourth amended complaint was "nearly identical to that alleged in the initial Complaint filed in this matter, and to language in the federal actions." Thus, the court concluded that Appellants were "unquestionably aware of U.S. Bank's name and its alleged role in the foreclosure proceedings, and even previously sued U.S. Bank in connection with the same property and foreclosure."

In addition, the court concluded that all the causes of action against U.S. Bank were barred by the doctrine of res judicata for almost the same reasons it articulated in its order sustaining SPS's demurrer.

Concerning Chase, the court explained that Appellants only recently added Chase as a Doe defendant in this action:

"In spite of the fact they mentioned . . . Chase in the [original] Complaint [in this matter], and that they allege[d] the [FDIC] sold certain assets and liabilities as to . . . Chase in 2008, Plaintiffs did not include . . . Chase as a Defendant in this action. Plaintiffs now claim that they were unaware of . . . Chase's potential liability in 2018 when they filed the Complaint. Plaintiffs, in fact, did not

12

include . . . Chase as a defendant in this case until 2020 when, after filing a Fourth Amended Complaint, they added . . . Chase to this action as a Doe defendant, at or about the same time they added Doe defendant U.S. Bank, an entity they had previously sued in relation to the foreclosure at issue in this case."

The court concluded that Chase was not a proper Doe defendant for the same reasons it made that determination as to U.S. Bank. In addition, the court explained, in detail, why the claims against Chase were time-barred and why naming Chase as a Doe defendant did not preserve or otherwise save those claims.

"Here, Plaintiffs were unquestionably aware of . . . Chase's name and its alleged role in the foreclosure proceedings, and even referred to this role in prior lawsuits and in the [original] Complaint, all in connection with this same property and foreclosure. . . . Chase is not a proper Doe defendant. To the extent that Plaintiffs assert that the allegations against . . . Chase arise out of some action unrelated to the servicing of the loan or the foreclosure on their home, the allegations would not 'relate back' and would, on their face be either the improper subject of a Doe amendment or barred by the applicable statute of limitations. In other words, although Plaintiffs now claim they only learned in 2020 through a newly created, or newly searchable, database about their specific claims against . . . Chase, these claims are wholly different from those alleged in the complaint and do not 'relate back.' The[y] are also, on their face, barred by any applicable statute of limitations because Plaintiffs have not, and cannot, allege any basis for delayed discovery or other tolling of these claims. 'Generally speaking, a cause of action accrues at the time when the cause of action is complete with all its elements.' [Citations.] An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover the cause of action. [Citations.]' (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806-807.) 'The discovery rule only

13

delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have ' " 'information of circumstances to put [them] on inquiry' " ' or if they have ' " 'the opportunity to obtain knowledge from sources open to [their] investigation.' " ' [Citations.] In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation.' (*Id.* at pp. 807-808.)

"Here, at the very least, Plaintiffs were on inquiry notice as to possible claims against . . . Chase, which recorded publicly available documents claiming an interest in the property in 2012. More specifically, the Fourth Amended Complaint alleges that assets held by Washington Mutual . . . at the time of its failure on September 28, 2008 were taken into receivership by the [FDIC]. The FDIC sold those assets and liabilities to . . . Chase . . . in 2008. Then on April 12, 2012, . . . Chase assigned its purported interest in [the White Loan] to U.S. Bank. Now for the first time, Plaintiffs allege that prior to Washington Mutual's failure the property was transferred to a third-party such that it could not have been transferred by the FDIC to . . . Chase. Aside from the fact that there is no recorded document evidencing this transfer, any claims Plaintiffs had against . . . Chase they knew, or should have known, about years before they filed the instant action."

On April 27, 2021, the court entered a judgment of dismissal in favor of Respondents. Appellants timely filed a notice of appeal.

## DISCUSSION

### A. Standard of Review

We review a trial court's order sustaining a demurrer de novo and apply the abuse of discretion standard in reviewing the court's denial of leave to amend the complaint. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318;

14

*Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1250-1252.) "In conducting our de novo review, we 'must "give[ ] the complaint a reasonable interpretation, and treat[ ] the demurrer as admitting all material facts properly pleaded." ' " (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 151.) "[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law." (*Yvanova, supra*, 62 Cal.4th at p. 924.) To prevail, "the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer. [Citation]. We will affirm the ruling if there is any ground on which the demurrer could have been properly sustained." (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.) If the pleading is insufficient on any ground specified in a demurrer, we will uphold the order sustaining the demurrer, even if it is not the ground relied upon by the trial court. (*Irwin v. Manhattan Beach* (1966) 65 Cal.2d 13, 20; *Intengan*, at p. 1052; *Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 946.)

"The fact that we examine the complaint de novo does not mean that plaintiffs need only tender the complaint and hope we can discern a cause of action. It is plaintiffs' burden to show either that the demurrer was sustained erroneously or that the trial court's denial of leave to amend was an abuse of discretion." (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.) Where the court sustains a demurrer without leave to amend, we decide if "there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.] . . . [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

15

B. Appellants Cannot Preemptively Challenge a Nonjudicial Foreclosure

"A nonjudicial foreclosure sale is a 'quick, inexpensive[,] and efficient remedy against a defaulting debtor/trustor.' [Citation.] To preserve this remedy for beneficiaries while protecting the rights of borrowers, 'sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust.' [Citation.] Under a deed of trust, the trustee holds title and has the authority to sell the property in the event of a default on the mortgage. [Citation.] To initiate a foreclosure, '[t]he trustee, mortgagee, or beneficiary, or any of their authorized agents' must first record a notice of default." (*Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 280.)

After a three-month waiting period, and at least 20 days before the scheduled sale, the trustee may publish, post, and record a notice of sale. (§§ 2924, subd. (a)(2), 2924f, subd. (b).) If the sale is not postponed and the borrower does not exercise his or her rights of reinstatement or redemption, the property is sold at auction to the highest bidder. (§ 2924g, subd. (a); *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 509; *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830-831.) Generally, the foreclosure sale extinguishes the borrower's debt; the lender may recover no deficiency. (Code Civ. Proc. § 580d; *Dreyfuss v. Union Bank of California* (2000) 24 Cal.4th 400, 411.)

Based on the foregoing, it is apparent that nonjudicial foreclosure is a creature of statute. (See *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 334 ["The Civil Code contains a comprehensive statutory scheme regulating nonjudicial foreclosure"].) Here, there are no allegations that a foreclosure has occurred. Indeed, the point of Appellants' suit appears to be to stop the

16

nonjudicial foreclosure process.  However, California courts generally do not allow a preemptive attack on a nonjudicial foreclosure.  (See *Yvanova, supra,* 62 Cal.4th at p. 924; *Saterbak, supra,* 245 Cal.App.4th at p. 814.)

In *Saterbak, supra,* 245 Cal.App.4th 808, the plaintiff argued "she may bring a preemptive action to determine whether the [foreclosing entity] may initiate a nonjudicial foreclosure" because " '[i]f the alleged "Lender" is not the true "Lender,' " it 'has no right to order a foreclosure sale.' " (*Id.* at p. 814.)  This court rejected the claim, noting "California courts do not allow such preemptive suits because they 'would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature.' " (*Ibid.*; see *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 [this court holding that the plaintiff's pre-foreclosure challenge to MERS's authority to initiate a nonjudicial foreclosure proceeding was an impermissible "attempt[ ] to interject the courts into th[e] comprehensive nonjudicial scheme"].)

In *Saterbak,* we recognized that the California Supreme Court in *Yvanova, supra,* 62 Cal.4th 919 had recently held that similar challenges were permissible under certain circumstances.  (*Saterbak, supra,* 245 Cal.App.4th at p. 815.)  But those circumstances require that the challenge be asserted post-foreclosure (rather than pre-foreclosure) and be based on a claim that the assignment to the foreclosing entity is void (rather than merely voidable).  (*Ibid.*; see *Perez v. Mortgage Electronic Registration Systems, Inc.* (9th Cir. 2020) 959 F.3d 334, 340 (*Perez*) ["[W]e follow the decisions of the California appellate courts in holding that California law does not permit preemptive actions to challenge a party's authority to pursue foreclosure before a foreclosure has taken place"].)

The courts have applied *Saterbak'*s reasoning to bar a variety of causes of action typically asserted in preemptive pre-foreclosure lawsuits challenging a foreclosing entity's authority. (See *Perez, supra*, 959 F.3d at p. 340 [cancellation of instruments]; *Williams v. Bank of America, N.A.* (9th Cir. 2017) 701 Fed.Appx. 627, 628 ["A borrower cannot assert a California-law claim for cancellation of instruments in a preemptive pre-foreclosure action."];[7] *Ruegsegger v. Caliber Home Loans, Inc.* (C.D. Cal., Apr. 30, 2018, No. SA CV 17-0907-DOC (KESx) 2018 U.S.Dist. LEXIS 226567, at *55 ["The Court finds that Plaintiffs' Slander of Title . . . [and other] claims are all predicated on Plaintiffs' argument that was rejected in *Saterbak* . . . ."]; *Asare-Antwi v. Wells Fargo Bank, N.A.* (9th Cir. 2021) 855 F.Appx. 370, 371 ["The district court did not err in dismissing [plaintiff]'s claims for declaratory judgment and slander of title" because "California law does not permit preemptive pre-foreclosure actions that challenge authority to foreclose"].)

Appellants acknowledge that California law generally does not allow preemptive challenges to nonjudicial foreclosures, admitting "[t]he prevailing case law" prevents a "pre-emptive challenge that impermissibly interjects the court into the statutory scheme of [section] 2924." Nonetheless, they claim their case is different. To this end, they frame the issue before us as one of first impression: "[W]hether rights granted in a contract prevail over a statute." In making this argument, Appellants advance two critical points. First, they assert that paragraph 22 of the deed of trust gives them the right to bring a suit to challenge the foreclosure before it occurs. Second,

---

7     We may cite and rely on unpublished federal court decisions as persuasive authority. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 64, fn. 4.)

18

Appellants emphasize that they are claiming that Chase never had any interest in the White Loan, and thus, it could not have executed a valid assignment to U.S. Bank. Accordingly, U.S. Bank has no right to foreclose on the deed of trust. We decline Appellants' invitation to create new law. The facts of this case do not warrant it.

Appellants claim their rights under the contract are being infringed. Specifically, they rely on paragraph 22 of the subject deed of trust. They argue "[t]he contract specifically states the borrower may bring an action to assert the non-existence of a default or any other defense to acceleration and sale." However, the deed of trust is attached as an exhibit to the fourth amended complaint and paragraph 22 does not grant rights to the borrower. Instead, it simply obliges the lender to inform the borrower of his or her existing rights. The pertinent full sentence from that paragraph, which Appellants have only quoted in part, reads: "The notice [of default] shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." Being informed of one's (existing) rights is not equivalent to being afforded new rights, and paragraph 22 does only the former.

Further, even if we were to read paragraph 22 as providing Appellants with a contractual right, it would not be the panacea they seek here.[8] Appellants admit that they are not current on the White Loan. In addition, they attach the notice of default to the operative complaint as an exhibit. Although they claim the notice of default is void because it flows from the

---

[8] There are no allegations that Barber is a party to the deed of trust, corresponding note, or the White Loan in general. As he is not a party to those agreements, it is elemental that he would have no rights under them.

19

2012 Assignment, Appellants do not otherwise challenge the accuracy of that recorded instrument. Relevant here, they do not claim the notice of default lists the incorrect amount in arrears under the White Loan. Nor do they claim that they brought the loan current after the notice of default was recorded.

The notice of default was recorded on March 2, 2015. It states that the White Loan was in arrears in the amount of $276,491.34 as of February 27, 2015. Again, Appellants do not challenge that the White Loan is in default or the amount the notice of default states is in arrears. Consequently, Appellants tacitly admit that they are in default under the deed of trust. Under standard contract principles, a party who has breached a contract without justification or excuse may not enforce the contact. (See *Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 458.) Here, Appellants offer no explanation, justification, or excuse for their breach. As such, even if we were to find that paragraph 22 conveyed them certain contractual rights to challenge the foreclosure, Appellants could not avail themselves of those rights.

Moreover, Appellants cite no authority for the proposition that a defect in an assignment could amount to either "the non-existence of a default or any defense . . . to acceleration and sale." The validity or invalidity of any assignment of the deed of trust or substitution of the trustee is wholly independent of whether Appellants are in default on the White Loan.

In addition, our analysis does not change if we consider *Hacker v. Homeward Residential, Inc.* (2018) 26 Cal.App.5th 270 as Appellants urge. There, the appellate court drew a distinction between challenging the ownership of the debt and challenging terms of a pooling and servicing agreement (PSA) with the former rendering the questioned document void

20

while the latter making it voidable. (*Id.* at p. 278.) Yet, this distinction does not advance Appellants' argument in the instant action because *Hacker* involved a post-foreclosure lawsuit. There is nothing in that case that supports Appellants' contention that by arguing the 2012 Assignment is void, they can interject the courts into a nonjudicial foreclosure.

There simply is no California authority to support Appellants' position here that they should be permitted to challenge the foreclosure before it occurs. Indeed, as we discussed *ante*, our high court explicitly limited the scope of its opinion in *Yvanova* to cases in which a nonjudicial foreclosure has already taken place and where the alleged defects would render the assignment void rather than voidable. (See *Yvanova, supra,* 62 Cal.4th at pp. 934, 939.) Additionally, we are hesitant to create any new law based on the allegations before us. Appellants admit they are in arrears under the White Loan. They do not allege that they have been making payments to some other third party only to be threatened by foreclosure by strangers. There are no averments that multiple parties are claiming a right to foreclose on the deed of trust. In other words, the instant matter does not present a novel question of law as Appellants insist. Rather, this appears to be an unfortunate and all too familiar foreclosure avoidance suit.

In fact, Appellants, in one form or another, have been trying to prevent the foreclosure for the past eight years. There have been three separate lawsuits and eight different complaints. In all these suits, a common theme emerged—the entities involved in the nonjudicial foreclosure process did not have the authority to take such action. To this end, Appellants have claimed the White Loan was discharged in bankruptcy, they had no reason to believe that Chase actually acquired the White Loan, the White Loan was not properly securitized and thus Chase did not acquire it, and finally, the White

21

Loan was sold to some third party so Chase never acquired it. However, among these allegations, we note that Appellants admit that they stopped paying on the White Loan. Further, they do not dispute that, as of early 2015, they were in arrears in the amount of $276,491.34 as of February 27, 2015. Appellants do not allege that they made any payments since the notice of default; thus, it logically follows that the amount in arrears has increased substantially over the past eight years. Appellants do not claim they made payments under the White Loan to some other third party and failed to receive credit on their loan for those payments. And perhaps most telling, shortly after obtaining the White Loan, the Whites purported to sell the Property to the Barbers for well over the amount of the White Loan. However, to the extent that the Whites actually received the Property's purchase price, it is clear they did not pay off the White Loan. And, it appears, simply based on the allegations of the various complaints, that the Barbers have lived in the Property for several years while the White Loan remains in arrears and further payments have not been made.

In short, based on the allegations in the operative complaint, Appellants cannot maintain a suit against Respondents to prohibit the foreclosure under the subject deed of trust. No California court has countenanced such a suit, and the facts of this case do not warrant creating new law. For this reason alone, we conclude the superior court did not err in sustaining Respondents' respective demurrers.[9]

_____

[9] Because we conclude Appellants do not have a legal basis to bring a suit to prohibit a nonjudicial foreclosure, we do not reach the remaining issues in their opening brief.

22

DISPOSITION

The judgment of dismissal is affirmed. Respondents are entitled to their costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:


IRION, J.


BUCHANAN, J.